## MACKIE v. STATE.*

(In Banc. April 6, 1925.)

[103 So. 379. No. 24874.]

1. COURTS. *Organization of special term not void because, on account of exhaustion of jury box, no jury was summoned by clerk before court convened.*

   Organization of special term of circuit court, under Hemingway's Code, Section 708, was not void because no jury was summoned by the clerk before court convened, the jury box having been exhausted, the judge having followed the statute when the court convened, by having the sheriff go out and summon a jury.

2. JURY. *Sheriff not disqualified to summon because of being witness in case.*

   The sheriff was not disqualified to summon the jury merely because he was a witness in the case.

3. CRIMINAL LAW. *In court's discretion to require defendant to consult with infant witnesses in presence of third person.*

   Though ordinarily defendant is entitled to consult with his witnesses alone, yet where they are children of tender years, timid and fearful under the circumstances, the court in its discretion may require a third person, friendly to them, to be present durduring the conference, and though ordinarily such person should not be the opposing counsel, appointment of the district attorney as such person *held* not an abuse of discretion, harmful to defendant.

4. CRIMINAL LAW. *On showing, no abuse of discretion in denying change of venue for prejudice.*

   The judge was within his discretion in overruling motion for change of venue, the overwhelming proof being that there was no such prejudgment or prejudice against defendant in the county that he could not obtain a fair and impartial trial.

5. WITNESSES. *Children seven and nine years old competent.*

   Children seven and nine years old were properly permitted to testify, the record showing they were intelligent, understood the oath reasonably well, and the penalty for testifying falsely, and that they qualified under the law as competent to testify in the case.

6. HOMICIDE. *Evidence of shooting of two others as part of same transaction, competent.*
Evidence of the shooting by defendant of two others than the one for whose murder he was being prosecuted *held* competent, on the ground that such matters were part of the same transaction, and admissible, not only as part of the *res gestae*, but to show the motive and to contradict the defense of accidental homicide.

7. CRIMINAL LAW. *Under facts, no error in not furnishing defendant list of special venire entire day before trial.*
Claim of error in failing to furnish defendant copy of list of special venire an entire day before the trial *held*, without merit, the list having been furnished twenty-four hours before the trial, exactly as requested, no objection having been made at the time as to proceeding to trial, and no request having been made in writing, as required by statute.

8. WITNESSES. *Matters on which defendant was cross-examined held proper for impeachment.* •
The matters about which defendant was cross-examined were relevant and proper for impeachment, they going to contradict the defense to which he testified.

9. CRIMINAL LAW. *Instruction held, when considered with others, not to require death penalty in case of conviction.*
Instruction in homicide case, that if jury believed certain facts beyond a reasonable doubt, verdict will be, "We, the jury, find the defendant guilty as charged," *held* not to limit jury to verdict carrying death penalty, when considered with other instructions they could fix punishment at death or life imprisonment.

---

*Headnotes 1.  Courts, 15 C. J., Section 245; 2.  Juries, 35 C. J., Section 264; 3. Criminal Law, 16 C. J., Section 2138 (1926 Anno); 4. Criminal Law, 16 C. J., Sections 306, 307; 5.  Witnesses, 40 Cyc., p. 2200; The question of competency of children as witnesses as dependent upon age is discussed in a note in 19 L. R. A. 605, et seq., 28 R. C. L., pp. 461, 463; 3 R. C. L. Supp., p. 1575; 5. R. C. L. Supp., 1540; 6. Criminal Law, 16 C. J., Section 1165; Homicide, 30 C. J., Section 429; 7. Criminal Law, 16 C. J., Section 2047; 8. Witnesses, 40 Cyc., p. 2769; 9. Criminal Law, 16 C. J., Section 2493.

APPEAL from circuit court of Pike county.

HON. E. J. SIMMONS, Judge.

George Mackie, alias George McKey, was convicted of murder, and he appeals. Affirmed.

*E. B. Williams* and *R. S. Stewart,* for appellant.

## I.

Call and Organization of the Special Term. The court in calling the special term undertook to comply with section 2698, Code of 1906, section 2188, Heming-way's Code, in that he undertook to direct the sheriff, chancery clerk, and circuit clerk to draw from the various jury boxes, a jury to constitute the regular jury for the week beginning Monday December 29, 1924.

It will be further observed however, on page 16 of the record, that although the jury had been summoned by the sheriff and though they were in actual attendance upon the court on the opening hearing thereof, the judge undertook to adjudicate the fact that no jury had been drawn by him, because of the fact that the jury boxes or jury lists, for the various districts, had been exhausted, and that there were no names or lists, from which a jury could or might be selected or drawn, and thereupon he undertook to order and direct the sheriff, upon a *venire facias* from the clerk, to summon thirty men to serve as jurors for the week, beginning December 29, 1924.

We respectfully submit that there is no law enacted by the legislature of Mississippi, nor constitutional provision in Mississippi whereby and under which a special term of court can be called, except there is a strict compliance with the law in the calling of such term. Was the special term of December 29, 1924, properly called? We submit that on the morning of December 29, 1924, there was begun and held in Magnolia, the county seat of Pike county, Mississippi no term of court, special or regular, because under the law and constitution of the state of Mississippi, there is no such thing known as a circuit court, without a complement of jurors. Under the constitution and law of the state of Mississippi, a trial by a jury is declared to be inviolate, and there can

be no special court without a jury, nor can one be organized without a jury.,

## II.

DEFENDANT WAS DENIED THE RIGHT OF CONFERRING WITH HIS WITNESSES WHOM HE HAD SUBPOENAED AND WHO WERE IN ATTENDANCE IN COURT. The right of accused to have the privilege of consulting with his witnesses and conversing with them, both in person and by counsel, is a step in or part of the right of trial by jury, guaranteed by the Constitution of the state and the United States, and cannot be infringed upon, limited or denied, and any attempt to abridge such right, or deny same constitutes a reversible error as held in the following cases: *White* v. *State*, 52 Miss. 216; *Allen* v. *State*, 61 Miss. 627; *Shaw* v. *State*, 79 Miss. 21, 30 So. 42.

Bear in mind that the only witnesses that could be called, either by the state or the defendant that could possibly throw any light upon what happened on the date of the homicide, were these children and to require the defendant, who was trembling in the very shadow of the gallows, to quiz his witnesses in the presence of the prosecuting attorney, was worse than an outright denial, for it was an attempt to say to the defendant: "You may prepare your defense in the presence of your legal adversary, and if you confer with your witnesses, whom you have subpoenaed in your own behalf, you must give the district attorney, in advance, your defense, acquaint him with what you expect to show by the witnesses with whom you have asked a conference.

## III

MOTION FOR CHANGE OF VENUE AND EVIDENCE ADDUCED ON HEARING OF SAME. The court's attention is directed to the motion for the change of venue, and especially to the evidence offered on same, both by the state and the defendant. The motion contained several grounds, all

sworn to, and that the only effort made by the witnesses offered on the part of the state in contravention of such motion, was to break down the sole allegation that, because of prejudgment in the public minds of the defendant's guilt, he could not get a fair trial, but upon the examination of such witnesses, all agreed that they could not name a person, out of the more than six thousand qualified voters in Pike county who could give the defendant a fair trial, nor could a one of them name a person who had said anything, other than condemnatory of the defendant. In all the wide range of testimony, not one witness could tell us a man who had spoken friendly or even fairly of the defendant.

The evidence showed the jury lists had been exhausted, that the sheriff was a strong partisan on the part of the state and against the defendant, and wholly disqualified to draw a venire, that the thirty names selected or summoned to constitute the jury for the week had been selected and summoned by the sheriff, even prior to the convening of the term and when he had no order from the court, right or authority from the law to select and have in attendance such persons for a jury or week's jury service, and every witness either on direct or cross-examination said that there was a general county-wide discussion of the case and a prejudgment of the same from newspaper reports, a sample of which we filed as an exhibit to the motion for a change of venue.

The affidavits to the motion, under the law, constituted a *prima-facie* case, and unless overcome by other evidence the court should have granted the change. Did the evidence as offered overcome such *prima-facie* case? We submit not. See *Tennison* v. *State,* 79 Miss. 708; *Brown* v. *State,* 83 Miss. 645, 36 So. 73.

The application for a change of venue should not be denied, simply because certain witnesses may have said that they believed that twelve impartial jurors might be found, and that because of the general good reputation of the citizenship of the county a fair trial could be had. See *Anderson* v. *State,* 97 Miss. 656, 16 So. 65.

## IV. •

SPECIAL VENIRE, HOW DRAWN, RETURN DAY OF SAME, SERVICE OF RETURN ON COUNSEL FOR DEFENDANT. Upon the return date of the venire the defendant exhibited his motion to quash same and for another venire urging in said motion that same had not been drawn as the law directed that the sheriff was disqualified to select or draw the jury and that the return had not been made as directed by law, either as to time or manner. Proof was taken on this motion, showing that the sheriff was a material witness on the part of the state, that he had called in the assistance of his various deputies, and that they had discussed the desirability or fitness of the proposed persons to be drawn, and that in this manner he prepared from the poll books the list he had served as special veniremen, and had made his return thereon, and showing too that he had summoned two of his relatives, whose names the district attorney ordered to be stricken off, or agreed to have stricken off, without the defendant's agreement thereto.

(a) The sheriff did not follow the order of the court in drawing such venire, as he did not select the men himself, but called in others and conferred with others, and this was done directly in fact of the statute on this subject. See section 2715, Code 1906, section 2208, Hemingway's Code.

(b) The sheriff was disqualified to draw the jury, being a witness against the defendant; and, too, the court's attention had been directed to this identical fact in the motion for a change of venue and the fact had been urged as a ground for the change, as the sheriff would be called to draw this venire, if asked for.

(c) The venire or return as requested by the defendant had not been at that time served upon him in the manner and for the time the law requires, in that a copy of the service and return had not been served upon the defendant or counsel for at least one full day before its return hour or day.

It has been repeatedly held that it was the duty of the court to see that the defendant in the court, when placed on trial should be tried by a jury, fair and impartial, unhampered, unembarrassed, and uncontrolled, except by the evidence. *Ferridy* v. *Howard,* 4 Howard 506; *Gilliam* v. *Brown,* 43 Miss. 641. To accomplish this, the court may set aside a juror, not challenged by either party. *Lewis* v. *State,* 9 S. & M. 115; *Williams* v. *State,* 32 Miss. 389; *Lewis* v. *State,* 85 Miss. 35, 37 So. 609; Sections 3942 and 3944, Code 1906; *State* v. *Lipscomb,* 76 Miss. 223.

We submit that while twenty-four hours have elapsed and did elapse from the time of service of such copy on counsel and the hour for the return of such *venire facias,* yet one whole day in contemplation of law had not transpired and the venire should have been quashed. This direct point has been repeatedly decided by the court incidentally, and twice directly, each case upholding the contention that such service as above set out does not constitute service for one full day under the law. *Nixon* v. *State,* 2 S. & M. 497, 41 Am. Dec. 601n; *Boatwright* v. *State,* *O'Quinn* v. *State,* 131 Miss. 511, 95 So. 513.

## V.

The evidence offered by the state, objected to by the defendant, the court's ruling thereon, and the challenge to the Witness Walter Bolian, made by the defendant on the ground of his tender years—being seven years old—and wholly incompetent because of his age to testify in any case, will now be considered.

It will be seen that while the defendant was placed on trial on only one charge, that of shooting Mrs. Will Bolian, he was nevertheless faced with the trial of three separate, distinct offenses, none of which, as shown by the record, had anything to do with the other, and none of which served to explain in any manner, the acts of the defendant in reference to the other crimes. It is respectfully submitted that the admission in detail of

the evidence showing the shooting of Harry Tarver, the range of the bullet in his body and the subsequent shooting of Fannie Bolian could not have had, and did not have, any connection with the killing of Mrs. Will Bolian, and was introduced for one purpose and only one purpose, and had but one effect, and could have had but one effect, that of poisoning the minds of the jury against the defendant, and assisting the state in securing the extreme penalty. *Dabney* v. *State*, 82 Miss. 252, 33 So. 973; *King* v. *State*, 74 Miss. 576, 21 So. 235; 65 Miss. 576, 5 So. 97; 7 Am. St. Rep. 681; *Little* v. *State*, 87 Miss. 512, 47 So. 165; *Mayor* v. *State*, 64 Miss. 329; 1 So. 733, 60 Am. Rep. 58; *Lloyd* v. *State*, 70 Miss. 251, 11 So. 689; 11 Enc. of Evidence, 403, p. 7; *State* v. *Taylor*, 7 Idaho 134, 61 Pac. 288; *Whitlock* v. *State*, 6 So. 237.

On the trial of the case the state was permitted over the defendant's objection to show that a difficulty took place between the defendant and Mrs. Bolian on Thursday night, preceding the killing Saturday, and the state was likewise permitted over the defendant's objection to contradict the defendant upon this particular point, and to show that Fannie Bolian spent the night or a part of same under the steps. Such evidence was inadmissible, highly prejudicial to the defendant, and should reverse his case. *Herman* v. *State*, 75 Miss. 340, 22 So. 873; *Garman* v. *State*, 66 Miss. 196, 5 So. 385; *Williams* v. *State*, 73 Miss. 820, 19 So. 826; *Davis* v. *State*, 85 Miss. 416, 37 So. 1018; *Bell* v. *State*, 38 So. 795; *Slaydon* v. *State*, 102 Miss. 101, 58 So. 977; *Magness* v. *State*, 106 Miss. 195, 63 So. 352; *Williams* v. *State*, 73 Miss. 820, 19 So. 826; *Jeffery* v. *State*, 77 Miss. 757, 28 So. 948; *Bell* v. *State*, 38 So. 795.

*Harry M. Bryan*, Assistant Attorney-General, and *J. W. Cassedy* for the state.

## I.

THE CALL FOR THE SPECIAL TERM AT WHICH APPELLANT WAS TRIED, AND THE ORGANIZATION THEREOF, WERE REG-

ULAR. It will be noted that the court, by its order, found (1) numerous cases appeared on the criminal docket and the county jail should be delivered of all persons charged with crime, and, (2) the public interest required a special term. In the same order the sheriff, chancery and circuit clerks were directed to draw thirty jurors for the first week, and the circuit clerk was ordered to give the notice required by law.

The court followed closely the requirements of Hemingway's Code, sections 466 and 708. The public interest was judicially found to require the special term, it was ordered to convene on a day certain, more than twenty days from the date of the order, proper notice was provided for and the order itself entered on the minutes. The statute is directory as to notice, as its very language shows. *Friar* v. *State,* 3 How. 422; *Ex Parte Neil,* 90 Miss. 516, 43 So. 615; *Mastronada* v. *State,* 60 Miss. 86.

When the special term convened, the court, by order, found that the circuit clerk, sheriff and chancery clerk had not drawn from the jury box of said county "the names of persons to serve as jurors for said term of court as required by law, for the reason that the names in said box had been exhausted and that there is in fact, no jury box in said county." And the court having examined and found same to be true, ordered the circuit clerk to issue a *venire facias* for thirty men, returnable *instanter,* to serve as jurors.

Without any objection, as shown by the record, to either the jurisdiction of the court or to the process of convening it, the defendant was arraigned on the first day and entered a plea of not guilty.

At the very threshold of counsel's objections he is confronted by section 2211 which makes directory all the provisions of law in relation to the listing, drawing, summoning and empaneling of juries. And in many cases this court has held that the discretion of the lower court will not be interfered with in such matters unless it is shown affirmatively that there was gross and in-

jurious exercise of it. *Head* v. *State,* 44 Miss. 731; *Buchanan* v. *State,* 84 Miss. 332, 36 So. 388; *Posey* v. *State,* 86 Miss. 141, 38 So. 324; *Ferguson* v. *State,* 107 Miss. 559, 65 So. 584; *Cook* v. *State,* 90 Miss. 137, 43 So. 618; *Wolford* v. *State,* 106 Miss. 16, 63 So. 316; *McVey* v. *State,* 117 Miss. 243, 78 So. 150.

Further, a special venire was ordered, issued by the clerk and properly returned as required by sections 2207 and 2208, Hemingway's Code. Section 2209, Hemingway's Code, provides that a challenge to the array shall not be sustained "except for fraud." And that a motion to quash will not lie except in capital cases. *Long* v. *State,* 96 So. 740. Fraud in drawing or summoning juries cannot be presumed but must be proved. *Campbell* v. *State,* 17 So. 441; *Cook* v. *State,* 90 Miss. 137, 43 So. 618; *McVey* v. *State,* 117 Miss. 243, 78 So. 150; *Bond* v. *State,* 91 So. 461.

## II.

THE LOWER COURT DID NOT ERR IN REFUSING DEFENDANT'S REQUEST TO BE ALLOWED TO CONFER ALONE WITH THE BOLIAN CHILDREN, SONS AND DAUGHTERS OF THE DECEASED.

Counsel cites three cases in support of his contention that the court's ruling was error; *White* v. *State,* 52 Miss. 216; *Allen* v. *State,* 61 Miss. 627; *Shaw* v. *State,* 79 Miss. 21. The White case is easily distinguishable from the case at bar in two main particulars. In this case each of the witnesses sought to be talked with by appellant and his counsel, were orphans of tender years, naturally timid and frightened by the very fact of being in court and awed by the reason for it. In the next place, the right to confer with them was not denied appellant. The court granted the application. However, because of the peculiar situation he ruled that in justice to all parties the conference should be held in the presence "of the district attorney, he being a sworn officer of the law."

It was held in both the Shaw and Allen cases that the lower court should have permitted accused or their coun-

sel to confer with their own witnesses because the only grounds urged against it were that the said witnesses were simply under the rule. It is therefore plain that there has always been a reservation in the minds of the members of this court who have passed upon such questions. Disastrous consequences could easily flow from establishment of a rule which would grant, as a matter of absolute right, the privilege of parties litigant to confer with witnesses alone and under all circumstances. The test is whether or not the lower court's action was an abuse of sound judicial discretion; whether or not it could be said on review that appellant was deprived of that fair and impartial trial guaranteed him by the Constitution.

## III.

Appellant's Motion for Change of Venue was Properly Overruled. The state resisted the application for change of venue by placing eleven witnesses on the stand to testify as to the state of the public mind. By them, the state overwhelmingly refuted the contention of appellant that his case was pre-judged and that he could not obtain a fair and impartial trial in Pike county. The gentlemen placed on the stand were men who came in contact with persons from over all sections of the county and in their testimony it is nowhere shown that there was such prejudgment as to destroy the right of appellant to have a fair and impartial trial.

In a long line of cases it has been held in this state that the discretion of the trial judge in ruling upon a motion for change of venue will not be disturbed unless a gross abuse of it is clearly shown. *Weeks* v. *State,* 31 Miss 490; *Mask* v. *State,* 32 Miss. 405; *Stewart* v. *State,* 50 Miss. 582; *Cavanah* v. *State,* 56 Miss. 299; *Dillard* v. *State,* 58 Miss. 368; *Bishop* v. *State,* 62 Miss 289; *Regan* v. *State,* 87 Miss. 422. See also in this connection, *Long* v. *State,* 96 So. 740, 133 Miss. 33, and *Bond* v. *State,* 91 So. 461.

## IV.

THE WITNESSES MAGGIE AND WALTER BOLIAN WERE COM-
PETENT AND WERE PROPERLY PERMITTED TO TESTIFY. Ap-
pellant urges that the lower court erred in permitting
Maggie Bolian, aged nine, and Walter Bolian, aged sev-
en, to testify for the state on the ground that they were
incompetent. The former testified that she had been
to school and was in the second grade; that she had gone
to Sunday School; that she knew what it was to tell the
truth and that persons who did not tell the truth "go to
the badman;" that she knew she ought to tell the truth.
When examined by counsel for appellant she was asked
such questions as, "Do you know the nature of an oath?"
to which she replied, "I don't know what you are talking
about." Clearly, such questions were so framed as to
be confusing and unintelligible to the child.

The court asked her, "If anyone tells you you are to tell
the truth, Maggie, you would understand what they
mean"? She answered "Yes, sir." Further, "You
know what the truth is?" "Yes sir." "If I ask you a
question, you know you should answer it truthfully?"
"Yes sir." A careful examination of the very accurate
statements of this young witness will reveal the fact that
she was possessed of more than sufficient intelligence
to qualify her as a competent witness.

Walter Bolian testified that he was seven years of
age, had gone to Sunday School, knew right from wrong
and knew what it meant to tell the truth. Under decided
cases of this court these two witnesses were clearly
qualified, to say nothing of the fact that there is over-
whelming testimony in the record sufficient to uphold the
verdict of the jury even without such testimony. *Trim*
v. *State,* 33 So. 718; *Peters* v. *State,* 106 Miss. 333, 63 So.
666; 40 Cyc. 2200; *Wheeler* v. *U. S.,* 159 U. S. 523; *State* v.
*Juneau,* 88 Wis. 180; *Commonwealth* v. *Robinson,* 165
Mass. 426; 3 Wigmore on Evidence, section 1821.

## V.

The Court Did Not Err in Admitting Testimony Showing the Shooting of Harry Tarver and Fannie Bolian by Appellant. The whole transaction was single and that evidence was properly introduced showing how and where Tarver was shot, the pursuit of Fannie Bolian and her wounding. It was not only all a part of the *res gestae* but was also properly admitted in order to show the state of mind of appellant as well as his motive. How anyone could say that these facts do not form one continuous and single transaction and were not necessary to be shown in order to determine the motive and malicious state of mind of appellant we are unable to determine. Authorities are not lacking. See *Collier* v. *State,* 106 Miss. 613, 64 So. 373; *Keel* v. *State,* 97 So. 521; 16 C. J. 588; 16 C. J. 600; *Culliver* v. *State,* 73 So. 558; *Bond* v. *State,* 91 So. 461.

## VI.

A Summary of and Reply to other Objections Urged by Appellant. This court has held that under section 1239, Hemingway's Code, requiring that on demand the State furnish the defendant a copy of the indictment and special venire "at least one entire day" before the trial, the "day" referred to means from midnight to midnight. It is not necessary for us to take issue with them on this holding for several reasons. But this record is absolutely silent as to any such motion in writing being filed by appellant. (b) The only motion or request made for the copies was that appearing on page 87 of the transcript, which was evidently dictated into the record, and which, by its very language requested that the copies "be served on us at least twenty-four hours or one full day before the setting for trial of the case." By his brief counsel admits that he was served in accordance with his motion or request.

This court at an early date held that the right to a copy of the special venire could be waived. *Loper* v.

*State,* 3 How. 429. And in the *Collier case,* 106 Miss. 613, 64 So. 373, it was held that the statute must be complied with by appellant in order to avail on appeal.

Counsel insist that the state was allowed to contradict and impeach the defendant on irrelevant and immaterial matters. We respectfully submit that questions asked the appellant by the state, while he was on cross-examination, touching statements made by him a short while before the tragedy to the effect that "I am going to kill everyone in the family," and questions touching statements made by appellant to officers after the homicide in which he detailed facts which differed from those given by him while on direct examination, were both relevant and material.

Argued orally by *R. S. Stewart,* for appellant, and *J. W. Cassedy,* for the state.

HOLDEN, J., delivered the opinion of the court.

George Mackie, alias George McKey, appeals from a conviction and sentence to death for the murder of Mrs. William Bolian on the afternoon of August 9, 1924, at her home about two miles north of Summit, Pike county.

A reversal of the judgment of the lower court is sought upon several grounds, and we shall notice and discuss the points in the order of their presentation, after stating the facts of the case as shown by the testimony introduced at the trial. The story of the tragedy, as shown by the evidence offered by the state, which was believed by the jury and is therefore to be viewed on appeal as the true facts of the case, is substantially and briefly as follows:

Mrs. William Bolian, the widow of William Bolian, deceased, lived on her little farm about two miles north of Summit. She was the mother of eight young children, the oldest being about fifteen and the youngest less than five years of age, all of whom lived with her in their home. She was engaged in farming in a small way, and

138 Miss.—48.

had employed the appellant, Mackie, to assist her in operating the farm. He lived in the same house with Mrs. Bolian and her children, occupying one of the rooms and taking his meals there.

On the afternoon of August 9, 1924, while Mrs. Bolian and two of her daughters, Maggie aged nine years, and Fanny aged fifteen years, were in Mrs. Bolian's room engaged in folding clothes, the appellant, Mackie, entered the room with a pistol in his hand and asked them, "Where are you going?" and when Mrs. Bolian replied to his inquiry, he pointed the pistol at them and said, "I am going to kill every damn one of you." Whereupon Mrs. Bolian grappled with him to prevent him from shooting her daughter, Fanny, who seemed to be the main object of his attention, and Mrs. Bolian began to scream while thus scuffling with Mackie, and she told Fanny to run, and Fanny ran from the house in an easterly direction. At this moment a young man by the name of Tarver, having heard the screams, rushed into the room to assist Mrs. Bolian, and thereupon Mackie shot Mrs. Bolian in the back killing her and then shot Tarver in the back, when he was trying to run away, and killed him.

Mackie then immediately gave chase to Fanny, who was still running away from the house, and caught her as she was running down by a creek about a quarter of a mile east of the house, and when he overtook her he put his arm around her and told her "he was going to hurt her," she begging him not to kill her, and shot her in the stomach. Fanny fell to the ground, and thinking that Mackie was about to shoot her again she closed her eyes as if dead, and thereupon Mackie fled and escaped from the state, was subsequently arrested in Florida, and brought back for a trial, which occurred in January of the present year. Fanny recovered sufficiently to testify in the case.

When the killing became known in the community, officers and other persons visited the scene and examined the premises where they found all of the other little

children huddled together at the steps of the home, found
Mrs. Bolian lying dead from a pistol shot in the back,
and found Tarver shot in the back, from which he died
after removal to the hospital, and the sheriff then went
down to the creek and there found Fanny lying upon the
ground shot through the stomach.

Extensive search was made for Mackie, but he was
not apprehended until about four months afterwards,
when he was arrested and brought back from Florida.
After he was arrested he told the officers, in substance,
that he killed Mrs. Bolian and Tarver because Mrs.
Bolian had attacked him with a butcher knife, and
Tarver had attacked him with an axe. The officers and
others who examined the premises found no signs or
evidences that any attack had been made in the rooms
with a butcher knife or axe.

The state introduced testimony showing that a few
days before the killing Mackie had told a neighbor, one
Dickerson, that ''he was going to kill off the whole fam-
ily'' if they interfered with him and his attentions to
Fanny, the fifteen-year old daughter. Something was
also said by him as to his getting a wedding dress for
Fanny. Mackie was forty-six years of age, was married,
and had a family in some other county.

The testimony of the eyewitnesses to the killing
showed, in substance, that Mrs. Bolian was unarmed and
making no attempt to hurt Mackie when he shot her; that
Tarver had no axe, nor did he try to hurt Mackie in
any way, but that, after he had reached the scene and
turned to leave, Mackie shot him in the back. Fanny
was unarmed and trying to get away from Mackie when
he caught and shot her in the stomach. The children
who were present and witnessed the crime were brought
from the Orphans' Home at Jackson to testify in the
case at Magnolia. They had not seen Mackie since they
saw him in the horrible role of murdering their mother
and Tarver, and shooting Fanny, until they saw him in
the court at Magnolia.

The appellant, Mackie, introduced no testimony except his own. He testified in his own behalf that, on the afternoon of the killing, he went into Mrs. Bolian's room and asked her where she was going, and that she told him it was none of his business and that he must quit going with her girl, Fanny, and that thereupon Mrs. Bolian reached under the bed and got a pistol and he grabbed it; that "they commenced screaming and hollering and Fanny and Maggie run;" that then Tarver came running into the room and that all three of them, Mrs. Bolian, Tarver, and himself, tusseled with the pistol, and that the pistol went off and accidentally killed Mrs. Bolian and went off again and accidentally killed Tarver, and that he pursued Fanny and when he caught her he put his arm around her to love her, and the pistol he had in his hand went off accidentally and shot Fanny. This is the substance of his testimony, which was intended to show that the homicide was accidental.

On cross-examination Mackie was asked if he did not state to the officers that he had shot Mrs. Bolian and Tarver because they had attacked him with a butcher knife and an axe, and he denied making the statement. The officers were put on the stand and testified that Mackie made the statement to them.

The trial of the case was had at a special term of the circuit court regularly called by the circuit judge, for the purpose, apparently, of trying the general list of criminal cases. Mackie had already been indicted at the previous regular October term of the circuit court, while he was an escape.

When court convened it was discovered that the jury box was entirely exhausted, there being no names whatever in the box from which to draw a jury. It also appeared that the judge had ordered the clerk to summon a venire of thirty regular jurors for the term, which venire had been summoned and was present. When it appeared to the judge that the jury box was exhausted, he adjudicated that no jury had been drawn, and he pro-

ceeded under the statute to issue a *venire facias* to be served by the sheriff, and in that way secured a jury of thirty for the term.

A special venire was demanded by the appellant, Mackie, and the court issued the writ for it, and the sheriff executed the writ by summoning the special venire to try the appellant, as the statute provides when there are no names in the jury box. The jury was finally selected, the defendant not having exhausted all of his challenges, and the trial proceeded to verdict and judgment. The errors complained of by the appellant, and urged for reversal of the judgment of the lower court, will now be taken up, discussed, and disposed of in the order in which they are presented on this appeal.

First, it is contended that the organization of the court was void, and that it could not function because there was no jury summoned as a part of the court, and that a court without a jury is not a court, and that the judgments of it are therefore void; and no notice of the special term was given; and that the sheriff could not summon the jury because he was a witness in the case. We think there is no merit in the contentions, because the court was regularly called and organized, and the fact that no jury was summoned because the jury box was exhausted did not render the organization of the court void. No jury could be summoned from the box by the clerk before the court convened, because there was no jury box from which to draw them, and the court convened and the judge followed the statute in having the sheriff to go out and summon the jury, the proceeding was within the law. The record shows that notice of the special term was given. Also, see section 708, Hemingway's Code.

It is well settled in this state that the fact the sheriff was a witness in the case does not of itself disqualify him from summoning the jury. No fraud or wrong was charged anywhere. No motion was made to disqualify or remove the sheriff.

Second, appellant complains that the court erred in not permitting him and his counsel to confer alone with his witnesses, the Bolian children, who were also state witnesses. When request was made by counsel that they be permitted to confer alone with the Bolian children, aged seven, nine, eleven and fifteen years, the state objected, unless the court would appoint some officer or friend of the children to be present with them at the conference. It is shown that the children were of tender years, very much excited, and were afraid to go into a private conference with Mackie whom they had not seen since they saw him shoot Tarver and Fanny and kill their mother; and the court viewed the situation, and held that defendant and his counsel could confer with these children but thought it was best under the circumstances to send the district attorney along with the children to allay their fear and excitement. Thereupon the conference was had with the district attorney present. No specific showing is made that injury was done the appellant by this action of the court.

We think the point is untenable because, while the general rule is that a defendant is entitled to confer alone with his witnesses, yet, in cases where the witnesses are children of tender years, timid and fearful under the circumstances, the court in his discretion may make an exception and require that third person, friendly to the children, shall be present during the conference.

This is a reasonable rule, and we think the order of the judge in that regard was not error. It may not be amiss to point out, however, that ordinarily in such a case the judge should select a third person, probably an officer of the court, who is not the opposing attorney in the case; but we do not think the appointment of the district attorney here was an abuse of discretion resulting in injury to the defendant.

Third, it is urged that the court erred in not granting a change of venue moved for by the defendant. The contention is not maintainable, because this record discloses that the overwhelming proof offered on the issue of

whether or not there was a prejudgment or prejudice against the defendant in the county, to such an extent that he could not obtain a fair and impartial trial, shows that there was no such prejudgment, and that he could secure a fair and impartial trial in Pike county. The judge, therefore, was well within his discretion in overruling the motion for a change of venue on the proof offered on the motion.

Fourth, it is contended by counsel for the appellant that the witnesses Maggie and Walter Bolian, aged nine and seven years respectively, were incompetent to testify in the case, and that the court erred in permitting them to testify. We have carefully considered the point, and have reached the conclusion that it cannot avail the appellant because the record shows the two children were intelligent, understood the oath reasonably well and the penalty for testifying falsely, and that they qualified under the law as being competent to testify in the case. The authorities hold that children much younger than these are competent to testify where their qualifications as to intelligence, education, and the understanding of the oath are shown. See *Peters* v. *State,* 106 Miss. 333, 63 So. 666.

Fifth, it is contended the court erred in admitting the testimony showing the shooting of young Tarver and Fanny Bolian by the appellant. It is claimed this testimony as to the shooting of Tarver and Fanny was incompetent, because it was no part of the *res gestae* on the charge of shooting Mrs. Bolian; that is, it was not part of the same transaction, but were separate crimes about which the testimony was incompetent on the trial for the murder of Mrs. Bolian.

It will be remembered the proof shows that when Mackie had shot Mrs. Bolian and Tarver he then immediately began to chase Fanny, who was running away from the house, and overtook her about a quarter of a mile from the house while she was still running to get away, and there shot her. The whole criminal transaction occurred in a very short time and was continuous

from the time Mackie shot Mrs. Bolian until he shot Fanny. Mackie, a few days before the killing, had threatened to kill the whole family. When he approached Mrs. Bolian and Fanny with the pistol in his hand, he said, "I am going to kill every damn one of you." He carried out his purpose and design as far and as soon as he could. Tarver was actually present and was killed at the time Mrs. Bolian was shot, and Fanny was attempting to escape from the scene when she was overtaken and shot by Mackie.

We think the testimony as to the shooting of Tarver and Fanny was competent, because it was part of the same transaction as the killing of Mrs. Bolian. It was a part of the *res gestae* and admissible for that reason, and went to show the motive of the killing of Mrs. Bolian and to contradict the defense of accidental homicide.

Sixth, it is contended in the brief of counsel that the court erred in failing to furnish the defendant a copy of the list of the special venire an entire day before the trial. This point was abandoned by counsel for the appellant in the oral argument, but we shall dispose of it by saying there is no merit in it, because the list was furnished twenty-four hours before the trial exactly as requested by the defendant, and no objection was made at the time as to proceeding to trial, and furthermore, no request for the list was made in writing as required by the statute.

Seventh, counsel for defendant insist that it was error to allow the state to contradict and impeach the defendant on immaterial matters. From an examination of the record we think the point is not well taken, because the matters about which the defendant was cross-examined while he was on the stand were relevant and were proper for impeachment, because they went to contradict the defense testified to by the appellant.

Eighth, it is urged by the appellant that instruction No. 3 granted the state was error because it told the jury that if they believed certain facts beyond all reasonable doubt, that their verdict will be: "We, the jury,

find the defendant guilty as charged.'' The exact point made is that this instruction tells the jury that if they believe he is guilty they should return only the verdict of guilty as charged which inflicts the death penalty, whereas the jury should have been told that they might fix the punishment at imprisonment for life if they found him guilty as charged.

We are unable to agree with counsel in this contention, for the reason that the court gave other instructions in which it told the jury that if they found him guilty as charged they could fix the punishment at death or at imprisonment for life. The instructions must be taken and considered together; therefore we see no error of the court in granting the instruction complained of.

Taking the record as a whole we are of opinion the appellant received a fair and impartial trial, and that the jury was well warranted in finding him guilty as charged. It is obvious that the jury was justified in disbelieving that Mackie accidentally shot Mrs. Bolian in the back, and then accidentally shot Tarver and Fanny, one in the back and the other in the stomach after chasing the latter for quite a distance from the home. The overwhelming proof in the record is to the contrary, and was believed by the jury in finding him guilty as charged in the indictment.

The judgment of the lower court is affirmed, and Friday, May 22, 1925, fixed as the date of execution.

*Affirmed.*