## WILL TARKINGTON *v.* THE STATE.

CRIMINAL LAW.    *Presence of officers and witnesses in jury room.*    *Verdict.*

Where jurors occupy the courtroom during their deliberations, and the clerk, his deputy, the bailiffs and porters in charge, and several deputies of the sheriff, two of whom testified for the state to material facts, remain in the room with them, one of them remaining all night, the jury is deprived of its perfect freedom to discuss and weigh the testimony, and its verdict of conviction should be set aside, although it does not appear that any of those present held improper communication with the jurors.

FROM the circuit court of Clay county.

HON. C. H. CAMPBELL, Judge.

Appellant has been convicted of murder, and appeals. The facts touching the only question passed upon by the court are stated in the opinion.

*S. G. Ivy, Jr.*, and *J. J. McClellan*, for appellant.

The separation of a jury in a capital case conclusively vitiates the verdict. Our court repudiates the doctrine that a separa-

tion is merely *prima facie* vicious, and holds that the jury should be kept free from liability to improper influences.    Thompson & Merriam on Juries, 368; *Hare* v. *State*, 4 How., 187; *Woods* v. *State*, 43 Miss., 364; *Russell* v. *State*, 53 *Ib.*, 367; *Skates* v. *State*, 64 *Ib.*, 644; *Brown* v. *State*, 69 *Ib.*, 398; *Cart-wright* v. *State*, 71 *Ib.*, 82.    It is the same in effect, whether the jury separate and mix with strangers, or strangers are allowed in the jury room.

*Frank Johnston*, attorney-general, for the state.

It is not shown that any improper influences were used upon the jury.    The rule is so clearly and fully defined, and the whole doctrine so well set forth, in *Skates* v. *State*, 64 Miss., 644, that it is unnecessary to cite other authorities.    There is nothing shown to raise the presumption that improper influences were brought to bear on the jury.    The mere presence of the porters in the courtroom does not discredit the verdict.    It was necessary that the ordinary duties of the porters and officers should be performed.    It is not shown that they tampered with the jury.

Argued orally by *J. J. McClellan* and *S. G. Ivy, Jr.*, for appellant, and *Frank Johnston*, attorney-general, for the state.

WOODS, J., delivered the opinion of the court.

The trial of the appellant in the court below was begun on January 22 and concluded on the twenty-fifth of the same month.    On the trial W. L. Cromwell, sheriff of the county in which the trial was had, appeared as a witness for the prosecution, and testified to material facts.    George Cromwell, a son of the sheriff and his deputy, was also introduced as a witness by the state, and testified to the same facts.    J. A. Stacey, another regular deputy sheriff, was likewise a witness on behalf of the state, and testified to other material facts.

On the night before the jury returned their verdict, and after their retirement from the bar for deliberation, the two

deputies just named were in the room with the jury, and one of them remained in the room with the jury all night. It seems that during the various recesses of the court in the progress of the trial, the jury was permitted to occupy the courtroom, and on this last night, after the case had been submitted to them, they also occupied the courtroom. On this night there were in the room with the jury nine other persons— the two deputies already mentioned; three other deputies, regular or special, including the bailiff who had been sworn to attend upon the grand jury; the clerk of the circuit court and his deputy, and the two porters who had the care of the courthouse. It does not appear that any of these nine persons had any conversation with the jury, or any of its members, touching the case, beyond a remark addressed by the clerk to the jury to the effect that, if they were likely to agree on a verdict, he would remain and receive it.

The eighth and tenth grounds of the motion for a new trial rest upon the presence with the jury in their retirement to consider of their verdict of public officers who were material witnesses for the prosecution, and the action of the court in overruling this motion squarely presents for decision the effect of such gross irregularity upon the finding of the jury.

The prime object sought to be attained by the withdrawal of the jury from the bar of the court, by their exclusion from all others and by the exclusion of all others from them, is that in absolute privacy they may deliberate undisturbed by any outward influence. In their deliberations they must examine, discuss, weigh and pass upon the evidence. They may have occasion to criticise and discredit parts of it, and, properly to discharge their delicate and often difficult duties in these particulars, they should be in condition to speak and act with perfect freedom. Alone and in seclusion, they enjoy this perfect freedom, for their deliberations are confidential. They need neither hesitate nor fear to frankly and freely speak out as to any witness, or the evidence of any witness.

Now, it must be obvious to any mind that the mere presence in the jury room of an officer would often prove unfriendly to full and free interchange of views between the jurors in their deliberations, and would be well calculated to hinder or prevent any expressions of opinion on the part of the more ignorant and timid members of the jury; but when the officer improperly present with them is a witness for the prosecution who has testified to material facts on the trial, then the greatest restraint is thereby placed upon every member of the jury in their examination of the evidence of such witness, and hostile criticism of such evidence would only be ventured upon by the boldest. A verdict obtained under such circumstances would not be the conclusion of that fair trial to which every person accused of crime is entitled.

This view has been vigorously maintained in *State* v. *Snyder*, 20 Kan., 306; in *People* v. *Knapp*, 42 Mich., 267; in *Gainey* v. *The People*, 97 Ill., 270; and in *Rickard* v. *State*, 74 Ind., 275, nor has its soundness been impugned by any court of last resort, so far as our research has extended.

This ground for reversal is not technical. It is vital, and of universal interest. It affects not only the prisoner, but the whole body of the people, for it touches the confidence of the public in the purity and impartiality of the trial by jury.

*Reversed and remanded.*