## WINSTON *v.* STATE.

[90 South. 177. No. 21690.]

1. CRIMINAL LAW. *Indictment and information. The word "feloniously" carries the idea of unlawful killing; objection to indictment's sufficiency must be made by demurrer.*

An indictment for murder charging that the defendant "did then and there wilfully, feloniously, and of his malice aforethought kill and murder" the deceased is a good indictment under section 1431, Code of 1906 (section 1187, Hemingway's Code). The word "feloniously" carries with it the idea that the killing is unlawful.

2. HOMICIDE. *Where deceased struck defendant with a weapon not necessarily dangerous prior to defendant's shooting deceased, verdict for manslaughter held warranted.*

Where the defendant and the deceased were engaged in a quarrel, and the deceased struck the defendant in the face with a lamp chimney, whereupon the defendant shot and killed the deceased, the jury were warranted in finding a verdict of guilty of manslaughter, the shooting occurring after the blow, and the lamp chimney not being necessarily a deadly weapon.

3. CRIMINAL LAW. *Where state's witness was placed on stand in accused's absence, accused's waiver held authorized by statute.*

Where a witness for the state in a homicide case was placed on the stand in the absence of the accused and testified that he knew the defendant and was asked a question intended to elicit flight, but his absence was discovered, and after so discovering such absence the trial judge tendered to the defendant a mistrial unless he should elect to proceed, and the defendant, after a conference with his counsel elected to proceed, and the trial proceeded in accordance with the desire of the defendant, such waiver is authorized by section 1495, Code of 1906 (section 1253, Hemingway's Code).

APPEAL from circuit court of Yazoo county.

HON. W. H. POTTER, Judge.

Beverly Winston was indicted for murder and convicted of manslaughter and sentenced to a term in the penitentiary, and he appeals. Affirmed.

*Whitehurst & Whitehurst* and *Wise & Bridgeforth,* for appellant.

Omitting the formal part thereof, the indictment reads as follows: "That Beverly Winston in said county, on the 10th day of November A. D. 1919, did then and there wilfully, feloniously, and of his malice aforethought kill and murder Tom Diamond a human being etc.," See 2 Words and Phrases (2 Ed.), 577.

You will note that the crime is not charged as being unlawfully done, therefore, the presumption arises that it must have been lawful. It may seem a little unreasonable that the appellant contends that the word unlawfully, should have been inserted in the indictment, but every homicide is not unlawful, and it is only those that are unlawful that are punished by law. If a man kills another in self defense, then he has a right to kill under our law which does not make that homicide unlawful. It is entirely lawful to kill in some instances and the failure of the indictment to charge it as being unlawfully done is fatal. *Jordan* v. *State,* 87 Miss. 170, 39 So. 895; *Pitman* v. *State,* 107 Miss. 154, 65 So. 123.

And we might be assailed with the remark that this should have been taken advantage of in the lower court and cannot now be raised for the first time in the supreme court. This also is not the law of our state. sec. 1413, Code 1906, 1163 Hemingway's Code, which provides, that all objections to the form or substance of an indictment, shall be made before verdict, applies only to those cases where the defect is of such a character that the accused may waive it expressly or by silence, therefore, if it is a nullity and describes no offense it is a nullity, and may be

objected to at any time; and this error is not one of form, but goes to the very essence of the offense, therefore the indictment is invalid, because in law, it charges no offense against the appellant. Since on account of the absence of this allegation, no crime was charged, an objection thereto can be made for the first time in supreme court, so held by this court speaking through SMITH, C. J. *Pitman* v. *State,* 107 Miss. 154, 65 So. 123; also *Newcomb* v. *State,* 37 Miss. 383.

The law on this point is well settled, and as this indictment fails to charge that the crime was "unlawfully" done it charges no offense and is bad.

II. The verdict was contrary to the weight of the evidence. Taking the evidence from all angles, it is boiled down to this, from the state's proof, and this section is written upon the state's proof, the appellant did not fire a shot or pull his gun until after he was assaulted and struck in the face with a lamp globe or chimney, which is such a dangerous instrument that it led the appellant to believe that he was about to suffer injury or great bodily harm at the hands of the deceased. It is essential to the crime charged, "with malice aforethought," not only that there should have been a design or intention by Beverly Winston to effect the death of Tom Diamond, but the killing must also have been without any justification. *Ellis* v. *State,* 108 Miss. 62, 66 So. 323.

And further it has been held in this state, that a person may even deliberately kill another without guilt if it be in necessary self defense. *Johnson* v. *State,* 27 So. 880. All the testimony of the witnesses was to the effect that Beverly Winston fired two shots, one striking Tom Diamond in the breast and the other going wild; and then a doctor was called who did not see the deceased, but answered questions as propounded to him hypothetically by the district attorney. At this stage of the trial, the state rested and the appellant made a motion to the court to exclude the evidence of the state and grant a peremptory

instruction for the appellant, which motion was by the court overruled; and therefore, as was shown by the state's proof, that the appellant fired after the attack was made on him by throwing a glass lamp globe in his face he then had the right to shoot and the court committed error in not so instructing the jury. *Sides* v. *State,* 96 Miss. 638, 51 So. 465.

The danger to Beverly Winston needed not to have been actual, nor the killing of Tom Diamond unavoidable, to justify the homicide, if he killed at a time he was in danger or reasonably believed himself to be in danger of suffering injury or great bodily harm at the hands of Diamond; then he had the right to kill Diamond, *Long* v. *State,* 52 Miss. 23; *Bang* v. *State,* 60 Miss, 571; *Ingram* v. *State,* 62 Miss. 142; *Godwin* v. *State,* 73 Miss. 873; 19 So. 712.

III.   The court erred in not ordering a mistrial on account of evidence being taken while defendant was absent from the court.

During the progress of the trial, the accused with the consent of the trial judge, was absent while part of the testimony for the state was taken, and the trial proceeded after an illegal attempt was made to waive his presence; this case falls directly under the courts holding in the Watkins Case, and an unbroken line of decisions prior thereto, even while section 1495, Code of 1906 was in force, and our court well knew of the existence of this statute and did not feel constrained to use it, so that section 26, Constitution 1890, which guarantees the right to appellant to be present at all stages of the case. In such case it is fatal error to proceed with a trial in the absence of the appellant, especially when a material witness was testifying as was the fact in this case. There is a long line of decisions on this score, the later expressions of this court are all in concord. *Lee* v. *State,* 101 Miss. 387, 58 So. 7; *Doss* v. *State,* 104 Miss. 598, 61 So. 690; *Watkins* v. *State,* 110 Miss. 438, 70 So. 457.

The court in the case of *Thomas* v. *State,* 117 Miss. 532, does not overrule this line of decisions, but in that case the trial had not begun, the jury was being empaneled, as a case is not on trial until a legal jury has been sworn to try the issue joined. In the long line of decisions the jury was sworn and the absence of the defendant was while a material witness was testifying, while in the Thomas Case, the trial had not yet begun, for a legal jury was not sworn to try the issue. The rule therefore in the Thomas case does not change the law, but becomes reconciled to the general law of the state, after, the jury is sworn, then the trial begins. *Sherrod* v. *State,* 93 Miss. 774, 47 So. 554; *Watkins* v. *State,* 110 Miss. 438; 70 So. 457.

If this court attempts to hold that the absence of the appellant, with the court's permission, can be waived, then the constitutional guaranty to be confronted by witnesses becomes a nullity.

*H. Cassidy Holden,* Special Assistant attorney-general, for the state.

It is first contended by the appellant that the indictment was fatally defective in that it failed to charge that the act committed was unlawful. The indictment charges that the defendant "did then and there willfully, feloniously, and of his malice aforethought kill and murder Tom Diamond a human being, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Mississippi." The indictment in the case of *Newcomb* v. *State,* 37 Miss., 383, contained the identical language quoted. As in the instant case, the indictment in the Newcomb case was objected to because it failed to charge that the act committed was unlawful. The court, through Justice Handy, in the Newcomb case, refused to reverse because of this defect in the indictment.

This court is thoroughly familiar with section 1187 Hemingway's Code (section 1431, Code of 1906), which reads as follows: "In an indictment for homicide it shall not be

necessary to set forth the manner in which or means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of his malice aforethought kill and murder the deceased." With special reference to section 26 of the constitution, the court, in the Newcomb case, held the above statute to be constitutional.

The evidence fully supports the verdict. The appellant contends that the verdict is contrary to the evidence. The evidence given by the witnesses for the state shows beyond any reasonable doubt, that the defendant shot the deceased as a result of a quarrel, in the heat of passion and on sudden provocation. A more perfect case of manslaughter cannot be found among criminal records.

Absence of defendant waived. It is urged that the judgment of the lower court should be reversed because the court failed to enter a mistrial when it was discovered that the defendant was absent from the court room for a few moments during which a witness for the State was asked three or four questions. The facts concerning this incident of the trial are shown in the record at pages 45, 46 and 47. Alf Rushing, witness for the state, was on the stand in rebuttal. He was asked three questions, when it was discovered by the court that the defendant was absent from the court room. The court immediately stopped the trial, caused the defendant to return to the court room, and offered to enter a mistrial if the defendant and his counsel so desired. Both the defendant and his counsel announced in open court that they did not desire to enter a mistrial but preferred to go ahead with the trial, which was, accordingly, done.

By virtue of section 1253, Hemingway's Code (section 1495, Code of 1906), the accused may waive his right to be present at any stage of his trial at the discretion of the court, if he is in custody and consents thereto. This statute was upheld in *Thomas* v. *State,* 117 Miss. 532, 78 So. 147. But the court went still further along this line in the

case of *Pool* v. *State,* 120 Miss. 842, 83 So. 273.   Wherein
the court held that although the prisoner was absent from
the court room and in jail when the district attorney com-
menced his argument, and he was brought into court and
the district attorney repeated substantially what he had
said and neither the prisoner nor his counsel objected to
what had been done in the prisoner's absence, until after
conviction, in such cases the conviction will not be set
aside where it does not reasonably appear that the de-
fendant suffered substantially prejudice by his absence.
The rule announced by the court in these two cases is a
sound and wise one.

No error in overruling motion for a peremptory instruc-
tion.   It is contended that the court erred in refusing to
sustain the motion of the defendant for a peremptory in-
struction, which motion was made at the conclusion of the
evidence for the state.   The motion was made on the
ground that there was a conflict between the testimony of
the various witnesses for the state.   Under such circum-
stances, the court properly overruled the motion.   Where
there is a conflict in the evidence in any case, such conflict
must be resolved by the jury alone.   Moreover, the evidence
for the state, in spite of this conflict made out a plain case
of manslaughter.   The court was preeminently correct in
overruling the motion.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for murder and upon trial
was convicted of manslaughter and sentenced to a term in
the penitentiary, from which judgment he appeals.

It appears that the killing occurred in 1915, and that the
appellant left the community and was not arrested until
1919, and the case was continued until April, 1920, and
again to October of said year.

It appears that the killing occurred at a crap game at
which a large concourse of negroes were assembled.   The
deceased, Tom Diamond, seemed to have been in charge of

running the game, and the appellant was participating in the game, betting thereon, and also betting on the side. It seems to have been contrary to the rule of the game to bet "on the side," and Diamond had deducted a nickel out of Winston's winnings for the infraction of this rule, and the difficulty arose out of Diamond's actions thereon. The appellant, according to the state's witnesses. stated to Diamond that he would have his nickel or go to hell, and that Diamond replied that he would have to go to hell because he was not going to give him the nickel. Some one produced a nickel to satisfy the dispute, but that seemed not to have satisfied the appellant, at least according to the state's evidence, and the difficulty was renewed when Diamond seized a lamp chimney and struck the appellant a blow on the cheek and the appellant fired twice, according to the state's witness, shooting the deceased through the breast, the bullet entering below the left nipple and ranging upwards and making an exit just below the collar bone. According to the state's witnesses these two shots were fired before the light went out, and some shots were fired after the light was extinguished. It appeared from the witnesses testifying on the trial that one shot took effect, and that the other went wild, but after the trial and verdict proof was produced by the appellant to show that Diamond was shot twice, one of the balls entering the abdomen, and that either wound would have been fatal.

It is first contended that the indictment is fatally defective because it charges that the defendant "did then and there willfully, feloniously, and of his malice aforethought kill and murder Tom Diamond, a human being, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state." It is argued that the word "unlawfully" is omitted, and that this vitiates the indictment, inasmuch as the killing of a human being is justified under some circumstances. The argument, we think, is without merit, independent of the statute, because the word "felonious" carries with it the meaning and idea that killing is unlawful. There may be an

intentional killing without it being a crime, but we cannot conceive of a felonious killing which would be lawful.

By section 1431, Code of 1906 (section 1187, Hemingway's Code), it is expressly provided by statute that it shall be sufficient to charge in an indictment for murder that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased.

In addition to what we have said, the question was not raised in the court below by demurrer, and the statute expressly requires this to be done.

It is next insisted that the verdict is contrary to the weight of the evidence. The evidence shows clearly and plainly that the defendant fired the shot, and that the only difficulty occurring that night was between the deceased and the defendant. It is insisted, however, that the evidence shows that the shot was fired in self-defense, inasmuch as it appears without dispute that the deceased struck the defendant with a lamp chimney. It does not appear that the blow with a lamp chimney would likely result in death or that it was necessarily a deadly weapon. It further appears that the shot was fired after the blow, and not to prevent the blow. The jury were warranted in finding the defendant guilty of manslaughter on the evidence.

It is next insisted that the court should have ordered a mistrial for the reason that the testimony of one Alf Rushing was taken during the absence of appellant from the courtroom, and that the attempt to waive his right to be present was illegal and could not be waived by him. It appears that when Rushing was offered as a witness he was asked as to whether he knew the defendant, and also a question tending to show or elicit the answer that the defendant had fled from the scene of the crime or killing. At this stage the trial judge discovered the absence of the defendant, stopped the proceedings before the question was answered as to flight, and when the defendant came in, he being at the time in the witness room, the judge asked counsel if he desired the jury discharged and a mistrial

entered, or whether he preferred to proceed with the trial. Counsel stated he preferred to proceed; that he did not desire to raise this question. The court then called the defendant around, explained to him that he had a right, or that he would grant him a mistrial if he desired it, and would not make him announce an election, but that, unless he elected to proceed, a mistrial would be entered, and that he could confer with his counsel about the matter. After conferring with his counsel, the defendant in person stated that he preferred to proceed with the trial and the trial proceeded.

We think there is no merit in this contention because section 1495, Code of 1906 (section 1253, Hemingway's Code), as construed in *Thomas* v. *State*, 117 Miss. 532, 78 So. 147, Ann. Cas. 1918E, 371, provides that the presence of the prisoner may be waived. The statute applies at any stage of the trial, and, unless we can say from the record that the appellant is prejudiced by his presence being waived, we will not reverse the case. There was nothing that transpired in the absence of the appellant that would warrant a reversal of the case. There is no merit in the other contentions.

*Affirmed.*