HOYE v. STATE.

(Division B. Feb. 5, 1934.)

[152 So. 644. No. 31073.]

W. W. Venable, of Clarksdale, and C. B.Cameron, of Meridian, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

114

Argued orally by **C. B. Cameron,** for appellant, and by **W. D. Conn, Jr.,** for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

Dr. M. J. L. Hoye, superintendent of the East Mississippi Insane Hospital at Meridian, sued out a writ of habeas corpus seeking to recover the custody of Roland Eatman, an alleged escape from said East Mississippi Insane Hospital, and who was in jail in Clarksdale, Coahoma county, Mississippi, under an indictment charging him with a felony. It was alleged by Dr. Hoye that Eatman had been adjudged to be insane, and ordered to be confined in said East Mississippi Insane Hospital by the chancery court of Lauderdale county, in 1927, and that he escaped from said institution in April, 1928, and that the petitioner had not discharged Eatman; that he is still insane; and that petitioner is entitled to the custody of Eatman. Dr. Hoye testified as a witness, saying that, while Eatman was suffering from psychopathic delinquency, and given to criminal tendencies, and not being able to resist temptation to commit crime, he was not properly an insane person, and that he was not properly a subject for the penitentiary either, but as the state had no provision for caring for such persons, it is necessary that they be restrained, and that Eatman should be awarded to his custody. The hospital records show a notation that Eatman was discharged in March, 1928, but Dr. Hoye testified that he had never discharged him, and that from time to time during the period of escape and the suing out of the writ, he (Dr. Hoye) knew where Eatman was, but made no effort to retake him, and that no warrant was issued for that purpose until just prior to the suing out of the writ of habeas corpus, when, at the instance of an attorney employed by the father of Roland Eatman, said warrant was issued. Dr. Hoye further testified that Eatman was very troublesome and nobody wanted him.

It is shown by the evidence in the case that Eatman had escaped from the hospital at Jackson, Mississippi, having been transferred from Meridian, and went into Louisiana; committed a crime there, and was confined

to the state institution for the insane in Louisiana, but that he was afterwards adjudged to be sane and was discharged from the Louisiana institution. It appears that he was reconsigned to the Hospital for the Insane at Jackson, Mississippi, some time prior to the suing out of the writ of habeas corpus, and was kept under medical observation there, and on an inquiry before the medical staff of said institution, he was discharged and a certificate of his discharge and his sanity was certified to the sheriff of Coahoma county, at Clarksdale. The assistant superintendent of the Hospital for the Insane at Jackson, Mississippi, who is also chief of the medical staff there, and is an expert psychiatrist, testified that Eatman is not insane; that he knew the nature and consequences of his acts, but claimed that he could not resist committing crime; that Eatman was disposed to crime and did not restrain himself; and that there are many persons inside and outside institutions for the insane similarly defective, but not insane.

The habeas corpus was heard before the circuit judge in the district in which Clarksdale is situated, and, after hearing the evidence, the judge dismissed the habeas corpus and held that Eatman was sane. It was also found, as a fact, that Eatman had been discharged from the Insane Hospital at Jackson, and that the action of the superintendent of the Insane Hospital at Meridian amounted to a discharge.

Dr. Hoye further testified that he frequently permitted patients to leave the institution and to remain away, where they did not receive adverse reports within three months after their discharge, and that they treated their patients on parol as discharged unless they found some evidence that such patients were still insane, after ninety days.

It appears that Dr. Hoye was proceeding under the theory that Eatman having been adjudged insane by the chancery court, and not having been discharged by the

authorities of the Insane Hospital at Meridian, the circuit court did not have the jurisdiction to withhold the custody of said Eatman from him.

It will be noted that the commitment was made in 1927, and that Dr. Hoye had not had custody of Eatman since 1928, and from the evidence it appears that the trial judge had the right to believe that Eatman was transferred from Meridian to Jackson on account of his escaping and returning home to his people, who lived in Meridian. It is shown by the evidence that after his escape from the Meridian Hospital for the Insane he had been adjudged to be sane in a judicial proceeding in Louisiana, and discharged from an insane hospital there, and that he had been examined by a medical staff of the Insane Hospital at Jackson, Mississippi, and had been declared to be sane.

The effect of the judgment of the chancery court is merely to adjudge that he was insane at the time of the hearing in that court. The fact that he was so adjudged can be introduced as evidence of his subsequent insanity, but it is not conclusive. When the chancery court commits a party to the insane hospital, it does not pass upon his right to a discharge, but, under the statute (Code 1930, sec. 4583), the authorities of the insane hospital pass judgment upon that question, and if they adjudge a patient to be sane, or to have recovered his sanity, the patient is discharged. See Ervin v. State (Miss.), 151 So. 177, decided December 4, 1933; Hawie v. State, 125 Miss. 589, 88 So. 167. In this latter case, the court held that if, ''at the arraignment of a defendant charged with the commission of a crime, it is suggested or appears to the court that he may be insane, the question of his sanity vel non should be inquired into and determined, and, if he should be found to be then insane, his trial should not be proceeded with unless and until he recovers his sanity,'' citing many cases; and further, that ''this rule cannot be complied with by simply post-

poning a trial or setting aside a verdict once because of the defendant's insanity, but each time thereafter when he is again called for trial, if a doubt arises as to his sanity, the court should proceed to determine that question anew (People v. Farrell, 31 Cal. 576), the test of insanity each time being whether the defendant can then make a rational defense." 2 Bishop's Criminal Procedure (4 Ed.), 297.

It will thus be seen that adjudication as to insanity at one time is not conclusive of insanity at another time. The matter is open to inquiry. It is well known that people recover their sanity, and also that people may be partially insane. In Smith v. State, 95 Miss. 786, 49 So. 945, 27 L. R. A. (N. S.) 461, Ann. Cas. 1912A, 23, it was held that where the defense is insanity, total or partial, the test of defendant's criminal responsibility is his ability, at the time he committed the act, to recognize and appreciate the nature and quality thereof, and his ability to recognize right from wrong, applying the same rule as to irresistible impulses. The appellant relies largely upon the case of Mabry v. Hoye, 124 Miss. 144, 87 So. 4, in which it was held that where a person escapes from the state insane hospital, commits a crime, is recaptured and reconfined in the hospital, and is still insane, the superintendent could not be required to surrender such patient to the circuit court on a habeas corpus trial, to be tried on an indictment against such patient for a crime committed during his escape. The testimony in that case showed that the patient was still insane and was growing worse. In concluding the opinion, the court there said: "A lunatic cannot be tried for a crime." The decision is to be interpreted in light of the facts before the court at the time. A lunatic who is so insane as not to be able to distinguish the nature and quality of his acts, or between right and wrong, is not responsible for crimes committed in that state of insanity, and cannot be put to trial to that extent. This

does not mean, however, that a person who is only partially insane, who has the capacity to distinguish right from wrong, and to understand the nature of his acts, may not be put to trial, although to an extent, he may be insane.

We think the court was warranted, upon the evidence, in finding that Eatman was sane, and that the conduct of the superintendent of the East Mississippi Hospital for the Insane at Meridian, who, with knowledge of his whereabouts, did not seek to retake the alleged escape for more than three months, was equivalent to a discharge.

However, it appears from the decision in Hawie v. Hawie, 128 Miss. 473, 91 So. 131, that where one under an indictment for murder is held in jail by an order of the circuit court, he is within the exclusive jurisdiction of that court, and the chancery court has no jurisdiction to inquire into his sanity under section 3219, Code 1906, section 4576, Code 1930.

In the case at bar, Eatman was not in the custody of the authorities of any state hospital for the insane, but had been legally discharged therefrom, and was in the custody of the circuit court under an indictment for a felony, and that court had the right and the power to pass upon the question as to whether or not he was sane.

It follows that the judgment rendered was correct, and it is affirmed.

Affirmed.