WILSON *v.* STATE.

(In Banc. April 14, 1947. Suggestion of Error Overruled May 19, 1947.)

[30 So. (2d) 62. No. 36297.]

**Gilbert & Cameron** and **Cecil Rogers**, all of Meridian, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

630

Argued orally by **C. B. Cameron**, for appellant, and by **R. O. Arrington,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

The appellant was convicted of the murder of Sherman Harper, and sentenced to death. Harper and appellant

resided about one fourth of a mile apart. On Sunday afternoon, January 20, 1946, appellant was at Harper's home when an argument, offensive on the part of Harper, arose, whereupon appellant went to his home, procured a shotgun and returned. The quarrel was renewed in Harper's front yard and grew in intensity. Appellant was followed by his sister and her husband, and, when they arrived, they sought to quell the disturbance and so did Harper's wife, but without success. Harper's wife then brought to the door a shotgun, and when Harper started in the direction of the front steps and towards his wife in the door, appellant shot and wounded him; but Harper made his way nevertheless into the house where his wife, assisted by appellant's brother and his brother-in-law, laid the wounded man on a pillow, and the two men immediately left in a truck to seek aid and to notify officers of the law.

After shooting Harper, appellant immediately departed and went into a pasture a short distance away. When the two men started for help they met appellant at a distance from the Harper's house of about "two town blocks," and he stated to them that he was going back and "get all them sons of bitches." He did go back; kicked open the back door; wounded Harper's wife, and then turned upon the nine-year-old daughter, following her under the bed where he shot her at such close range as to sever her head from her body. Seeing that the wife was not dead, he shot her head off. During this time the wounded man, Harper, was protesting and threatening to kill appellant, whereupon appellant said he had as well finish him too, and he fired the gun so close to Harper's head and neck as to produce a result similar to that upon the other two victims. He slew all he found there.

The above facts, as to all that happened before appellant reached the house on his return for the slaughter, were shown by witnesses other than by appellant's confession. What he did on his return is shown by the officers, who a few hours later examined the place, and the

bodies, and by appellant's confession. The officers failed to find appellant immediately, but about eleven or twelve o'clock that night, he came, or was brought, to the police station at the county seat, when he denied that he had done the killing but averred that his brother had done it. The next morning, however, his mother, his sister, his two brothers, and his brother-in-law appeared at the jail, and, in their presence, he made a full and detailed confession and went with an officer to the scene of the crime, and there re-enacted it.

There was no objection or suggestion that the confession was not entirely free and voluntary, and none that the actions of the appellant in returning to the scene with the officer were not free and voluntary. The objection to the confession was that it involved the commission of other crimes than that of the murder of Sherman Harper for which he was being tried; and throughout the trial appellant made the same objections as to any testimony which brought into view the murder of the wife and child. All these objections were correctly overruled by the trial judge, and no other authority is necessary on that point than Mackie v. State, 138 Miss. 740, 103 So. 379.

Appellant's main contention, and the one most earnestly urged by his counsel, is that enough was shown in the cross-examination of appellant's sister, who had been introduced as a witness by the State to raise a doubt as to appellant's sanity, and that the State proceeded nevertheless without any effort, preliminary or otherwise, to remove that doubt. The sister testified that appellant, who was between nineteen and twenty years old at the time of the trial, had entered public school at five years of age and continued therein until sixteen years old and had never in all that time advanced beyond the first grade. That he has never been ''bright''; that ''he just always had funny ways, crazy like''; that he would never associate with other children, and would say nothing to anybody unless first spoken to; that he was difficult to

control; that sometimes his mother could do something with him but at other times she couldn't; that his mother as he grew to be a lad took him with her when she went to work "because she knew how he was, always kind of crack brained." The witness said further that sometimes appellant would listen to her, the sister, and that she had "kept him out of lots of trouble just talking to him, but that at times she could do nothing with him." She said that when he became angered, he would sometimes go into what she termed as "fits" and that in such frenzies he would strike members of the family "with sticks and things," but she added that after he had "come back to himself he would cry and be sorry for it." She said, too, that when he was drinking he was worse—"just make him crazy," and there was evidence that on this afternoon appellant had been drinking some, but not so much as to be obviously drunk. This witness said also that for about two or three years next before the homicide, appellant had been working at Mr. Baum's sawmill and that deceased also worked at that mill.

This is the only witness who testified on the question of appellant's sanity, and she was not asked whether he had sufficient mental capacity at the time to distinguish between right and wrong as to the particular act; and this has been the test in this state from Bovard v. State, 30 Miss. 600, on down to the present. And this test prevails although the defendant is partially insane. Hoye v. State, 169 Miss. 111, 119, 152 So. 644. In Garner v. State, 112 Miss. 317, 73 So 50, it was said that although the defendant is shown to be eccentric, passionate and excitable, this would not be enough to raise a real issue as to his sanity, and that mere frenzy and ungovernable passion is not insanity within the meaning of the law. And this was all that was shown in the present case, except that here the proof further shows a case of low mentality; but low mentality, if still sufficient to meet beyond a reasonable doubt the affirmative of the test

mentioned in the opening of this paragraph, is not insanity in the criminal law.

The jury was sufficiently instructed by several charges granted, at the request of the appellant, that they should acquit if from the testimony or the want thereof they entertained any reasonable doubt whether at the time of the homicide he was able to distinguish right from wrong. Work in and around a sawmill is no place for an imbecile, or even a half-wit, and where it is shown, as here, that the accused so worked for more than two years next before the time of the homicide, it would require more than was shown in this case to raise a doubt in the minds of a jury whether he had sense enough to discriminate between right and wrong in a case which would so remarkably challenge his sensibilities, as was the case here; and there are other features in the record which additionally support the conclusion of the jury on this issue as evidenced by their verdict.

Earnest complaint is made of improper argument by the district attorney wherein he persisted in comments contrary to the instructions and admonitions of the court. The special bill of exceptions shows that upon every objection to such argument the court sustained the objection and stated to the jury that they must pay no attention to the objectionable comments. Appellant, however, made no motion for a mistrial on account of the argument—in the absence of which we cannot reverse. Floyd v. State, 166 Miss. 15, 148 So. 226. See also Brush v. Laurendine, 168 Miss. 7, 150 So. 818.

We have considered all the assignments which have been argued and do not find enough in them to form a sound basis for reversal.

Affirmed, and Friday, May 23, 1947, is fixed as the date for the execution.