HAMBURG *v*. STATE.

(In Banc.  May 10, 1948.)

[35 So. (2d) 324.  No. 36776.]

566

W. F. Latham, of Quitman, for appellant.

**Greek L. Rice**, Attorney General, by **R. O. Arrington**, Assistant Attorney General, for appellee.

Argued orally by **W. F. Latham**, for appellant, and by **R. O. Arrington**, for appellee.

**L. A. Smith, Sr. J.,** delivered the opinion of the court.

Appellant was jointly indicted with others for the murder of Mr. Emmett Buckley. He obtained a severance, was tried and convicted, and sentenced to electrocution. Upon appeal here he assigns several errors, but we discuss only those assignments which we consider serious enough to merit discussion.

Mr. Buckley, a State Senator, was walking to his home in Enterprise late at night, when appellant, and some other young men passed him in a truck, as he was passing over a long bridge spanning the Chickasawhay River. At the instigation of appellant, the truck was stopped

near the end of the bridge, and he borrowed a knife from one of his companions. They all alighted from the truck, and went back and met Senator Buckley for the purpose of robbing him, or as appellant put it in his confession, ''They were aiming to get the money and dump the man.'' As stated, the bridge was across the Chickasawhay River. Deceased attempted to defend himself with a small pocket knife, and also screamed for help. In the scuffling, appellant stabbed Senator Buckley fatally, whereupon all of the youths, having become frightened by his outcries, fled without robbing their victim. The resident of a nearby home, aroused by the screams, and a nephew of the Senator, attracted by the noise, went to the scene, and carried him to the neighboring home, but he died in a few minutes. Certain clues led to appellant, who was arrested and confessed. No point was made against the admissibility of the confession either in the lower court or here.

At the trial, defense was interposed on the ground of appellant's insanity, the proof offered in support thereof being that he was epileptic. Conceding that the conflicting testimony sufficiently established him to be afflicted with epilepsy, yet all of the witnesses, psychiatrists, medical doctors, and lay witnesses alike, agreed that he knew the difference between right and wrong. According to our decisions, this was sufficient to establish his legal sanity, as relating to the perpetration of the crime charged against him. Nelson v. State, 129 Miss. 288, 92 So. 66. In the very recent case of Wilson v. State, 201 Miss. 627, 30 So. (2d) 62, we held that the test of a defendant's sanity is whether he had sufficient mental capacity at time of commission of homicide to distinguish between right and wrong, regardless of whether defendant was partially insane. Since there is no testimony in this record justifying any conclusion that appellant was legally insane, even partially, we are constrained to overrule this contention. Compare also Carter v. State, 199 Miss. 871, 25 So. (2d) 470, at page 472.

Appellant filed a motion for a new trial, and during the hearing thereof witnesses were introduced, and the motion overruled, at a time when the defendant was in jail, and, therefore, not present in court. No objection was raised against proceeding in his absence, by his attorney, who, of course, filed the motion and examined the witnesses on behalf of his client, the appellant. On the authority of some earlier cases, appellant urges here that this procedure, in appellant's absence, was prejudicial error, and that neither appellant nor his attorney could waive it. On the other hand, the Attorney General argues that it was not prejudicial error entitling appellant to reversal, since his presence was waived by his attorney, who had a right to do so; and since nothing occurred during the hearing of the motion to the prejudice of appellant. We have receded from our earlier view, as expressed in the cases cited by appellant. Thomas v. State, 117, Miss. 532, 78 So. 147, 149, Ann. Cas. 1918E, 371.

Section 2519, Code 1942, a rescript of the statutes in the Codes of 1906 and 1930, and Hemingway's Code, in its pertinent part, reads as follows: "In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto." In the case at bar, during the hearing of the motion for a new trial, one witness in answer to a question not addressed to the point at issue, and with no purpose relating thereto, stated that the defendant was in jail. The trial judge thereby was appraised of his absence. His attorney caused the hearing to progress in the absence of appellant, and no prejudice to his cause appears to have been suffered by him on account of thereof. The trial Judge, aware of the absence, in his discretion did not suspend proceedings until appellant was present; the appellant, at a time when he was in custody, waived by his counsel his right to be present; and was not harmed thereby. The "progress" of the hearing, in appellant's absence, during the

consideration of the motion for a new trial, was justified under the statute.

In the Thomas case, supra, we held that the statute is constitutional and valid; announces a reasonable rule; promotes fair and impartial trials, and is conducive to administration of justice; does not deny any constitutional right, simply permits its waiver, and, that cause would not be reversed unless it be shown that, because of his absence, defendant did not receive a fair trial. A long list of cases from many other states, holding in harmony with our views in the Thomas case, is cited therein. The rule is no different in a felony case and a capital case, under the statute. We declared in the Thomas case: "The statute here makes no exception or distinction between felonies and capital cases. In fact, all capital cases are classed as felonies." We dealt with this same question in Winston v. State, 127 Miss. 477, 90 So. 177, 179, involving a homicide, where we said: "We think there is no merit in this contention because Section 1495, Code of 1906" (as construed in the Thomas case) "provides that the presence of the prisoner may be waived." We further held that "unless we can say from the record that the appellant is prejudiced by his presence being waived, we will not reverse the case."

In Odom v. State, 172 Miss. 687, 161 So. 141, a robbery case, a felony, the motion for a new trial was heard in the absence of a defendant in custody. This, it is said, was by consent of appellant's counsel, as in the case at bar, and that Section 1276, Code 1930, permits this to be done where the defendant was not prejudiced, citing Winston v. State, supra. In the case now before us, also, no prejudice to appellant resulted from hearing his motion for a new trial, due to his absence, as we have stated.

From what we have said, ante, it follows that this assignment of error will be and is overruled.

The appellant also complains that "Mr. Hamrick, one of the State's witnesses, who testified for the State was also one of the bailiffs who attended the jury during this

trial and stayed all night with the jury in the same room of the court house two nights during the trial which influenced the jury and was unfair to appellant and that neither the appellant nor his attorney knew that Mr. Hamrick would be a witness for the State when he was sworn in as bailiff and to allow said bailiff to remain with the jury and also to testify for the State is reversible error.'' This was one of the grounds for a new trial in the motion therefor, which was overruled by the trial judge. It is to be noted from appellant's complaint, quoted above, that he does not charge that Mr. Hamrick, the bailiff, was present in the juryroom during the deliberations of the jury. It is to be further borne in mind that it is to be gathered also from his testimony at the hearing of the motion that he was not present during the deliberations of the jury. Appellant, however, cites Tarkington v. State, 72 Miss. 731, 17 So. 768, 769.

In the Tarkington case, the jury deliberated in the court room. The sheriff and two of his deputies testified as witnesses for the State: ''On the night before the jury returned their verdict, and after their retirement from the bar for deliberation, the two deputies just named were in the room with the jury, and one of them remained in the room with the jury all night . . . On this night, there were in the room with the jury nine other persons,—the two deputies already mentioned; three other deputies, regular or special, including the bailiff who had been sworn to attend upon the grand jury; the clerk of the circuit court and his deputy; and the two porters who had the care of the court house. It does not appear that any of these nine persons had any conversation with the jury, or any of its members, . . .'' We reversed that case because of the presence of outsiders during the *deliberations* of the jury. ''The prime object sought to be attained by the withdrawal of the jury from the bar of the court, by their exclusion from all others, and by the exclusion of all others from them, is that in absolute privacy they may deliberate, undisturbed by any out-

ward influence. In their *deliberations* they must examine, discuss, weigh, and pass upon the evidence." It may be seen, therefore, that the facts of the Tarkington case are not the same as those of the case at bar, and hence it is not controlling here. Bailiffs in charge of juries necessarily have to be alone with them on proper occasions in order to serve and guard them, and since Mr. Hamrick does not appear to have been in the room with them during their deliberations, we would not reverse the case for this assignment of error.

However, the Attorney General directs our attention to the fact that this ground for a new trial was urged as unknown to counsel and his client until after the verdict, and that the procedure followed by appellant did not comply with the rule laid down in such cases as Hilbun v. State, 167 Miss. 725, 148 So. 365, and the more recent one of Stewart v. State, 203 Miss. 295, 33 So. (2d) 787. In the Hilbun case [167 Miss. 725, 148 So. 366] the rule is announced that "On a motion for a new trial based on facts not known during the trial, both the defendant and his attorneys *must make affidavit*, or testify under oath, that they were ignorant of such facts during the trial." Incidentally, we have italicized "must make affidavit", as relating back to appellant's absence from the hearing on the motion, to emphasize that his absence did not prejudice him, because his affidavit would have sufficed in his absence.

Furthermore, we are bound by the statement in the record of the trial judge that "I want the court to know that he" (Mr. Hamrick) "was called in open court with Mr. McKinney and sworn in open court by the clerk and no objection was stated to this man serving as a bailiff after the defense attorney and the defendant himself learned that he was a prospective witness." So, it will be seen that neither appellant nor his attorney could accurately make affidavit or testify that they did not know of such facts on the motion for a new trial, and did not do so. Under the rule in the Hilbun and Stewart cases, the

court below properly overruled the motion for a new trial, on this ground.

In this connection we point out that it would be wiser for courts to avoid the development of such a situation as bailiff to jury testifying in the case. On the other hand, defendants and their attorneys should not be permitted to observe and survey such a proposal and prospect without protest and objection before the trial gets under way, and bailiffs assigned to their posts with the jury. And, later, upon loss of the verdict, seek to utilize it as a ground of a motion for a new trial, especially where, as here, the bailiff was not shown to have been present with the jury in their deliberations.

Since we find no reversible error in the record of this case, it is affirmed, and Friday, the 18th day of June, 1948 is fixed for the date of the electrocution of appellant.

Affirmed and June 18, 1948, set for date of electrocution.