# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00237-COA

IN THE MATTER OF J.C.: W.C.                                          APPELLANT

v.

J.C.                                                                  APPELLEE

DATE OF JUDGMENT:                   12/04/2020
TRIAL JUDGE:                        HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:          DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:             PHILIP MANSOUR JR.
ATTORNEYS FOR APPELLEE:             CHARLES E. WINFIELD
                                    ASHLYN BROWN MATTHEWS
NATURE OF THE CASE:                 CIVIL - OTHER
DISPOSITION:                        AFFIRMED - 09/20/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1.    W.C. filed a commitment affidavit to have his wife, J.C., involuntarily committed. After entering into an agreed order for commitment, J.C. completed treatment and was discharged eighteen days later.  J.C. moved to set aside the agreed order and dismiss the action, to which W.C. objected.  The chancery court granted J.C.'s request and found that W.C. had no standing to object.  W.C. appeals from the order of dismissal, asserting that the chancery court erred when it (1) found J.C.'s motion was timely; (2) failed to protect the interests of J.C. and W.C.'s minor children; (3) determined that W.C. had no standing to object to J.C.'s motion to set aside the order; and (4) granted J.C.'s motion.  Finding no error,

we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    W.C. and J.C. are married and share three minor children.  In December 2019, W.C. filed an affidavit for involuntary commitment against J.C., which stated that while not diagnosed with a mental illness, she was exhibiting bizarre behavior and posed a threat of physical harm to herself or others.  Pursuant to Mississippi law, a writ was issued, and J.C. was taken into custody for pre-evaluation screening by physicians.[1]  The screening was performed, and a "certificate of physician/psychologist" was filed with the chancery court. According to the certificate, J.C. "did not meet statutory commitment criterion."  The doctors handwrote on the certificate that it was their opinion that "[t]here is no evidence of mania or psychosis.  She is no danger to herself or others.  She is not in need of mental treatment."

¶3.    In spite of this assessment, at the commitment hearing J.C.'s attorney signed an agreed order for commitment on her behalf.  By statute, J.C. should have been present at the hearing,[2] and the hearing should have been dismissed when the examiners determined there

---

[1] "Whenever the [Uniform Civil Commitment Affidavit] provided for in Section 41-21-65 is filed with the chancery clerk, the clerk, upon direction of the chancellor of the court, shall issue a writ directed to the sheriff of the proper county to take into custody the person alleged to be in need of treatment and to take the person for pre-evaluation screening and treatment by the appropriate community mental health center established under Section 41-19-31."  Miss. Code Ann. § 41-21-67(1) (Rev. 2018).

[2] "The respondent must be present at the hearing unless the chancellor determines that the respondent is unable to attend and makes that determination and the reasons therefor part of the record."  Miss. Code Ann. § 41-21-73(2) (Rev. 2018).

was no need for treatment.[3] The agreed order required J.C. to immediately enter Pine Grove Behavioral Health and "follow any and all treatment and discharge recommendations the center required." Pine Grove was required to release J.C.'s records to the court "to the extent necessary to allow said [c]ourt to determine whether" J.C. was compliant with the order, and to inform the court if J.C. did not comply. The order also required J.C. to provide proof to the chancery court that she was enrolled in the program. It also stated that "upon successful completion of the requirements of this order this petition will be dismissed and this file permanently sealed."

¶4. J.C. completed eighteen days of treatment at Pine Grove and was discharged. In November 2020, approximately eleven months later, J.C. filed a motion to set aside the agreed order and dismiss the cause of action because the order called for ongoing treatment that she did not need. J.C. attached two exhibits to her motion: (1) the certificate of the examining physician from the original commitment hearing; and (2) a form from the Professionals Health Network Inc., an organization that was required to monitor J.C. after the commitment proceedings in order for her to keep her professional orthodontist license. The Professionals Health Network form stated that J.C. had "no diagnosis," was on no medication (explicitly expressing that there was "no need for meds"), had high compliance with all recommendations, had no high risk issues, and had "no need for intervention." The doctor handwrote on the form, "[Patient] is a psychologically stable, high functioning

---

[3] "If, as a result of the examination, the appointed examiners certify that the person is not in need of treatment, the chancellor or clerk **shall** dismiss the affidavit without the need for a further hearing." Miss. Code Ann. § 41-21-71 (Rev. 2018) (emphasis added).

professional, with no liabilities or need for meds." This form was completed in June 2020. At the hearing on the motion to set aside the agreed order in December 2020, W.C. objected, but he was informed by the chancery court on its own motion that he had no standing to object. The chancery court dismissed the original action in a one-page order that did not list the reason for dismissal. W.C. filed his response in opposition to J.C.'s motion to set aside the agreed order, and later filed a motion to reconsider or alter or amend the judgment and for other relief. In February 2021, the chancery court issued an order denying the motion to reconsider or alter or amend the judgment. Aggrieved, W.C. appealed.

**STANDARD OF REVIEW**

¶5.     "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Britt v. Orrison*, 323 So. 3d 1135, 1144 (¶31) (Miss. Ct. App. 2021) (quoting *Anderson v. Anderson*, 266 So. 3d 1058, 1060 (¶8) (Miss. Ct. App. 2019)). "We will not disturb a chancellor's findings of fact unless they are not supported by substantial evidence." *Koestler v. Koestler*, 976 So. 2d 372, 378 (¶16) (Miss. Ct. App. 2008) (citing *Pacheco v. Pacheco*, 770 So. 2d 1007, 1009 (¶8) (Miss. Ct. App. 2000)). "Additionally, we will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous." *Id*. (citing *Vaughn v. Vaughn*, 798 So. 2d 431, 433 (¶9) (Miss. 2001)). "We review questions of law de novo." *Id*. (citing *Ladner v. Necaise*, 771 So. 2d 353, 355 (¶3) (Miss. 2000)). "We review a trial court's decision regarding the admission of evidence for abuses of discretion." *Id*. at 380 (¶26) (citing *Burton v. State*, 875 So. 2d 1120, 1122 (¶6) (Miss. Ct. App. 2004)). "Motions that seek relief from judgment pursuant to [Mississippi

4

Rule of Civil Procedure 60] are addressed to the sound discretion of the trial court, and the only question asked on appeal is whether the trial court's ruling on such a motion amounts to an abuse of discretion." *Accredited Sur. & Cas. Co. v. Bolles*, 535 So. 2d 56, 58 (Miss. 1988) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)).

## ANALYSIS

### I.   Whether the agreed order was properly dismissed.

¶6.   W.C. raises a number of issues that attack the validity of the court's decision to dismiss the agreed order of commitment. They are consolidated under this heading. J.C. counters that the chancery court properly dismissed the agreed order for three reasons: (1) per section 41-21-71, the commitment proceedings should have been dismissed when J.C. was examined and found not to need commitment, making the agreed order void under Mississippi Rule of Civil Procedure 60(b)(4); (2) because J.C. completed the terms of the agreed order, by the order's own language it should have been dismissed under Rule 60(b)(5); or (3) because J.C.'s circumstances fall within the broad category of "any other reason justifying relief from the judgment" under Rule 60(b)(6). Although these arguments are all persuasive, we need to address only one to determine if the order dismissing the agreed order was appropriate. In this case, we find that J.C. successfully completed the terms of the agreed order and that it was properly dismissed.

¶7.   Rule 60(b)(5) states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

5

> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . .

M.R.C.P. 60(b)(5). "The grant or denial of a 60(b) motion is generally within the discretion of the trial court, unless the judgment in question is found to be void. In that case the trial court has no discretion; it must set the void judgment aside." *Sartain v. White*, 588 So. 2d 204, 211 (Miss. 1991) (citing *Overbey v. Murray,* 569 So. 2d 303, 306 (Miss. 1990)).

### A. Whether the motion to set aside was untimely filed.

¶8. Here W.C. first argues that the chancery court had no jurisdiction to hear J.C.'s motion to set aside the agreed order because the motion was untimely filed. "A motion made pursuant to Rule 60(b)(4), (5), or (6) must be made 'within a reasonable time' after the entry of the judgment." *Ravenstein v. Ravenstein*, 167 So. 3d 210, 216 (¶10) (Miss. 2014) (quoting M.R.C.P. 60(b)). "What constitutes a reasonable time period is determined on a case-by-case basis." *Indymac Bank F.S.B. v. Young*, 966 So. 2d 1286, 1290 (¶13) (Miss. Ct. App. 2007) (citing *Jenkins v. Jenkins*, 757 So. 2d 339, 344 (¶11) (Miss. Ct. App. 2000)). "The court must take into account whether the opposing party has been prejudiced by the delay in seeking relief and whether there is good reason for the defaulting party's failure to take appropriate actions sooner." *Id.*

¶9. W.C. argues that eleven months after the entry of the agreed order was an unreasonable amount of time for J.C. to delay before filing her motion to set aside said order. But W.C. has pointed to no prejudice he has incurred as a result of the eleven-month delay. Additionally, it seems reasonable for a chancery court to reconsider an order after eleven

6

months when the terms require completion of treatment, like the agreed order in this case. Furthermore, the statutes that govern persons in need of mental treatment expressly grant the chancery court "continuing jurisdiction over a person committed to an inpatient or outpatient treatment program under this chapter for one (1) year after completion of the treatment program." Miss. Code Ann. § 41-21-104 (Rev. 2018). Given this record and law, we find that the chancery court had jurisdiction over the matter.

> B. *Whether the chancery court failed to enforce the terms of the agreed order.*

¶10.    W.C. next argues that the chancery court did not enforce the terms of the agreed order because the court required Pine Grove to supply the chancery court with documentation "to the extent necessary to allow said [c]ourt to determine whether Respondent is compliant with the provisions of this [o]rder," which Pine Grove failed to do. He also argues that J.C. did not "immediately provide proof to this office that [J.C.] is enrolled into and attending" the program at Pine Grove. W.C. asserts that because these two conditions were not met, J.C. did not fully comply with the order.[4]

¶11.    It is undisputed by the parties that J.C. entered into the inpatient program at Pine Grove, completed said program, and was discharged after approximately eighteen days in compliance with the requirements of her treatment. Because of these facts, Pine Grove did

---

[4] W.C. also argues that J.C. did not follow Pine Grove's discharge instructions as required by the agreed order. J.C. argues that her discharge instructions did not require medication or intensive treatment. W.C. has attached the discharge instructions to his record excerpts. However, "[a]ttaching documents to briefs or including them in record excerpts does not make them a part of the certified record as required by Mississippi Rule of Appellate Procedure 10, and so they will not be considered [by this Court]." *Jones v. Jones*, 307 So. 3d 1229, 1231 (¶7) (Miss. Ct. App. 2020).

not need to send documents "to the extent necessary" to gauge compliance. Nor does J.C.'s failure to provide the chancery court documentation of her enrollment in the program negate the fact that all parties agree she attended and completed the program. According to this Court "[o]ne of the procedural maxims of equity is that it looks to the intent, and will regard substance rather than form." *Est. of Perry v. Perry*, 61 So. 3d 193, 196 (¶13) (Miss. Ct. App. 2010) (quoting *Int'l Paper Co. v. Basila*, 460 So. 2d 1202, 1203 n.1 (Miss. 1984)). Furthermore, our Supreme Court has stated:

> A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw, and his decree will not be set aside on appeal unless, as is not the case here, it is made to appear that it is not equitable but inequitable to let it stand.

*In re Est. of Flowers*, 264 So. 3d 775, 779 (¶16) (Miss. 2019). These maxims of equity apply in the present case. We cannot determine that the chancery court abused its discretion when it followed the substance over the form of the agreed order, and when it made what appears on appeal to be an equitable determination under the circumstances.

C.      *Whether there was admissible evidence presented to the court.*

¶12.    W.C. next argues that the chancery court was provided no admissible evidence on which to rely in holding that the agreed order should be dismissed. He argues that the "certificate of examining physicians" and letter from the Professionals Health Network that J.C. attached to her motion to set aside were "unsworn, inadmissible hearsay." First, the agreed order did not specify that any particular documents be submitted to dismiss the petition. The order simply stated that J.C. must successfully complete the inpatient program at Pine Grove, which she did: "upon successful completion of the requirements of this order

8

this petition will be dismissed." And second, the certificate of examining physicians was an earlier filing in J.C.'s current case. "The trial court may take judicial notice of available evidence in its own court files." *Peden v. City of Gautier*, 870 So. 2d 1185, 1187 (¶7) (Miss. 2004) (quoting *Gulf City Fisheries Inc. v. Bobby Kitchens Inc.*, 518 So. 2d 661, 664 (Miss. 1988)). Furthermore, the letter from the Professionals Health Network falls within the hearsay exception in Mississippi Rule of Evidence 803(4). Rule 803(4) gives an exception for statements that meet the following requirements:

> (4) . . . A statement that:
>
>> (A) is made to any person at any time for—and is reasonably pertinent to—medical diagnosis or treatment;
>>
>> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause; and
>>
>> (C) is supported by circumstances that substantially indicate its trustworthiness.
>
> In this paragraph, "medical" includes emotional, mental, and physical health.

M.R.E. 803(4).

¶13. Here, the statements made in the document are "reasonably pertinent to" J.C.'s earlier treatment at Pine Grove, they describe her present symptoms (here, none), and no evidence has been put forth to indicate that the doctor assigned to J.C. by the Professionals Health Network was untrustworthy. Given this, we find that this issue is also without merit.

## II. Whether W.C. had standing to object to the dismissal of the order of commitment.

¶14. W.C. argues that the court erred when it concluded, on its own motion, that he had no

standing to object to J.C.'s motion to set aside the agreed order. W.C. argues that as the party who filed the original affidavit for commitment, and as a relative who has rights under the statutes regarding commitment, he should have standing to object to J.C.'s motion to set aside the agreed order. We are not persuaded by this argument. The statutes W.C. points to are those that give W.C. a right as an "interested person"[5] to request a hearing regarding the need for further treatment if the facility recommends continued hospitalization,[6] or to seek a patient's release from treatment.[7] These statutes allow interested persons to restore liberty to their loved ones who have been committed, not to remove their liberty after a physician deems the patient is no longer in need of treatment.

¶15. Our courts have been clear that the question of discharge is properly one for hospital authorities. *See Hoye v. State*, 169 Miss. 111, 117, 152 So. 644, 645 (1934). "Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists

[5] "'Interested person' means an adult, including, but not limited to, a public official, and the legal guardian, spouse, parent, legal counsel, adult child, next of kin, or other person designated by a proposed patient." Miss. Code Ann. § 41-21-61(e) (Rev. 2018).

[6] "If at any time within twenty (20) days after admission of a patient to a treatment facility the director determines that the patient is in need of continued hospitalization, he shall give written notice of his findings, together with his reasons for such findings, to the respondent, the patient's attorney, the clerk of the admitting court and the two (2) nearest relatives or guardian of the patient, if the addresses of such relatives or guardian are known. The patient, or any aggrieved relative or friend or guardian shall have sixty (60) days from the date of such notice to request a hearing on the question of the patient's commitment for further treatment." Miss. Code Ann. § 41-21-81 (Rev. 2018).

[7] "Nothing in Sections 41-21-61 through 41-21-107 shall preclude any patient, his attorney, or relative or guardian from seeking a patient's release from a treatment facility . . . ." Miss. Code Ann. § 41-21-89 (Rev. 2018).

10

and psychologists." *Bethany v. Stubbs*, 393 So. 2d 1351, 1354 (Miss. 1981) (quoting *Addington v. Texas*, 441 U.S. 418, 429 (1979)), *modified on other grounds by Catchings v. State*, 684 So. 2d 591 (Miss. 1996). Even the court must defer to the medical professionals when determining whether or not to discharge a patient. *See Hooks v. Jaquith*, 318 So. 2d 860, 861-62 (Miss. 1975).

¶16.    Given this background, the chancery court did not err when it found that W.C. had no standing to object to J.C.'s motion to set aside the agreed order. W.C. was not the correct person to object to the medical diagnoses—or as in this situation, the lack thereof—given to J.C. by her doctors. The physician evaluations in the record indicate that J.C. is not a danger to herself or others, she evinces no mania or psychosis, and she has no diagnosis of mental illness or need for medications. Because the court must rely on medical determinations in matters of sustaining a commitment, we find that W.C. had no standing to object to the dismissal of J.C.'s agreed order.

### III.    Whether the chancery court failed to protect the interests of W.C. and J.C.'s children.

¶17.    Finally, W.C. asserts that the chancery court failed to protect the interests of the minor children he and J.C. share. W.C. argues that the chancery court has a duty to protect the interests of the minors, and that it should have, on its own motion, convened a full hearing as to J.C.'s mental stability in order to protect their interests. He cites cases that embrace the maxim of equity that "[w]hen parties are disabled equity will act for them," including children who are under the disability of minority. *Alack v. Phelps*, 230 So. 2d 789, 792-93 (Miss. 1970); *see also Price v. Crone*, 44 Miss. 571, 575 (1870). But these cases are

11

inapplicable here. Nothing requires a chancery court to assess the interests of the minors in the present case. Mississippi Code Annotated section 41-21-65(5) does require the affiant in an involuntary commitment proceeding to disclose whether the patient has custody or visitation with minor children. And if a person has been found to "[pose] an immediate substantial likelihood of physical harm to himself or others" and is subsequently held for treatment, the law requires that if an "individual resides or has visitation rights with a minor child, and if the individual is considered to be a danger to the minor child, the mental health professional shall notify the Department of Child Protection Services prior to discharge . . . ." Miss. Code Ann. § 41-21-67(5)(a)-(b). But here, J.C. was determined by the two psychiatrists who examined her prior to her placement at Pine Grove to be "no danger to herself or others." And months later she was deemed to have no diagnosis of mental illness and require no medication by another physician. Therefore, there was no ground for the chancery court to convene a hearing to protect the interests of the minor children as W.C. asserts. Thus, we find that this issue is also without merit.

**CONCLUSION**

¶18. In conclusion, we find that the chancery court had jurisdiction in this matter. We further find no reversible error in the chancery court's ruling when the court (1) dismissed the agreed order for commitment as J.C. requested; (2) found that W.C. had no standing to object to J.C.'s motion to set aside the agreed order; and (3) declined to require a hearing regarding the interests of the minor children. Because of the foregoing, we affirm the judgment of the chancery court.

12

¶19.   **AFFIRMED.**

      **BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**